UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>SEWARD SHIP'S DRYDOCK, INC.,<br><br>Debtor. | Case No. A15-00279-GS<br><br>Chapter 11 |
| SEWARD SHIP'S DRYDOCK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA MARINE HIGHWAY SYSTEM, a Division of the State of Alaska Department of Transportation and Public Facilities,<br><br>Defendant. | Adv. No. A15-90014-GS |

**ORDER ON DEFENDANTS' MOTIONS TO REMAND
AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

On January 5, 2016, the court conducted a hearing on the following three matters:

1) Motion To Remand Administrative Claims and State Court Action (ECF No. 11), filed by defendant State of Alaska, Department of Transportation and Public Facilities ("ADOT/PF");

2) Motion for Remand or, in the Alternative, Abstention and Request for Order That Remanded/Abstained Proceedings are Exempt From Bankruptcy Stay and Can Proceed During Pendency of Plaintiff/Debtor's Bankruptcy Proceeding and Request For Attorney Fees, Costs and Expenses (ECF No. 10), filed separately by the Commissioner of ADOT/PF; and

3) Motion For Leave To Amend Complaint (ECF No. 21), filed by plaintiff Seward Ship's Drydock, Inc.'s ("SSD").

The court shall refer to the first two motions collectively as the "Motion for Remand."

At the hearing, Gary Sleeper appeared for ADOT/PF. Sara Gray also appeared on behalf of ADOT/PF. Gene Gustafson appeared for the Commissioner of ADOT/PF. David Bundy and Sam Baker appeared for the debtor. For the following reasons, the court exercises its discretion under 28 U.S.C. § 1452(b) to remand all proceedings removed to this court. As a result, SSD's Motion for Leave to Amend Complaint shall be denied as moot.

## FACTS

On October 16, 2012, the Alaska Marine Highway System ("AMHS") awarded SSD a contract in the amount of $6,271,608.00 to provide services in connection with the refurbishing of the M/V Tustumena, including substantial steel work and welding.[1] The Tustemana is an ocean ferry providing transportation for those living in the Aleutian Islands. The work did not go as planned and resulted in more than 100 change orders. The parties strongly disagree as to who bears responsibility for the problems encountered and the resulting change orders. Originally scheduled to be completed by April 5, 2013, SSD did not finish the project until October 2013. Despite a number of extensions of this deadline, AMHS charged SSD $600,000 in liquidated damages under the contract for performance delays.

SSD incurred substantial costs and expenses above the contract amount as a result of the additional work required by AMHS. On October 10, 2013, it submitted a Claim for

---

[1] *See* Ex. 1 to Decl. of James Pruitt in Supp. of SSD's Opp'n to AMHS's and the Commissioner's Mot. to Remand and SSD's Mot. for Leave to Amend Compl. ("Pruitt Decl."), ECF No. 16-2 at 2.

2

Additional Compensation to AMHS, seeking $3,991,461 for additional costs and work.[2] SSD also sought to reverse the liquidated damages imposed by AMHS. On June 11, 2014, Captain John F. Falvey, Jr., general manager of AMHS and the contracting officer for the project, issued a 21 page letter decision on SSD's claim. Captain Falvey denied SSD's claim for additional compensation, but reduced the liquidated damages to $260,000.[3]

SSD challenges both the substance of the denial of its claim, as well as the procedures used in the decision making. Substantively, it contends that AMHS bears the responsibility for the additional work and, therefore, it is entitled to recover for that additional work. Procedurally, SSD argues that the contracting officer improperly relied upon the attorney general's office to draft the decision denying its claim. On June 30, 2014, SSD filed its Notice of Appeal of the Contracting Officer's Decision with the Commissioner of ADOT/PF as required by AS 36.30.625.[4]

Both SSD and the Attorney General's office anticipated that the Commissioner would appoint a private attorney as the hearing officer for the appeal.[5] Instead, SSD's appeal was assigned to the Office of Administrative Hearings ("OAH"). Upon referral of the appeal from the Commissioner, OAH appointed Administrative Law Judge Stephen Slotnick to hear

---

[2] Ex. 4 to Pruitt Decl., ECF No. 16-5 at 25.

[3] Ex. 2 to Decl. of Sam Baker, Jr. in Supp. of SSD's Opp'n to AMHS's and the Commissioner's Mot. to Remand ("Baker Decl."), ECF No. 15-3 at 21.

[4] ADOT/PF's Mem. in Supp. of Mot. to Remand Administrative Claims and Superior Court Lawsuit, ECF No. 12 at 3.

[5] Ex. 5 to Baker Decl., ECF No. 15-6.

3

the matter. SSD challenges OAH's appointment of Judge Slotnick on numerous grounds: that it was denied the opportunity to confer as to the selection of the hearing officer; that OAH lacked jurisdiction to appoint a hearing officer; that a conflict of interest existed due to Judge Slotnick's prior employment as an attorney general and his prior association with Assistant Attorney General Dana Burke, with whom he worked at the Attorney General's office; and that Judge Slotnick was unqualified to hear the appeal.

SSD first raised these concerns at the initial case planning conference held in OAH appeal on August 6, 2014.[6] It then presented these issues for consideration in its Corrected Motion to Dismiss filed on October 3, 2014. In this motion, SSD contended its appeal should be dismissed on the grounds of violation of its due process rights, estoppel, and lack of jurisdiction.

The dismissal motion was fully briefed. Judge Slotnick rejected SSD's arguments in a detailed Order Denying Motion to Dismiss entered on November 7, 2014. Shortly after issuing this order, he convened a scheduling conference. SSD expressed its strong desire to set the hearing as soon as possible, while counsel for ADOT/PF urged that the hearing be set for much later in the year, due to her prior scheduling conflicts. Judge Slotnick set the matter for March 31, 2015, over the objections of ADOT/PF.

Less than a week after the scheduling conference, on November 19, 2014, counsel for SSD and the Attorney General's office filed a Joint Motion to Commissioner for Withdrawal

---

[6] *See* Ex. 7 to Baker Decl., ECF No. 15-8 at 5-6.

4

of OAH Referral and Assignment of Private Hearing Officer ("Joint Motion").[7] The Joint Motion was directed to the Commissioner of ADOT/PF, and requested that he withdraw referral of the hearing to OAH and reassign it to a private hearing officer "to accommodate the scheduling needs of the parties and afford them an opportunity to fairly present their claims and defenses."[8] The parties represented that the March 31, 2015 hearing was too soon to permit adequate preparation, and asked that the matter be reset for no sooner than September 21, 2015.[9] That same day, Judge Slotnick issued his Order Denying Motion to Commissioner for Withdrawal of OAH Referral and Vacating Hearing Date.[10] In it, he explained that once the hearing was referred to OAH, the Commissioner lacked the ability to withdraw the referral or appoint a new hearing officer. Judge Slotnick further noted that he had scheduled the hearing for March 31, 2015, at SSD's request. However, in light of the parties' joint representations that such date did not allow for sufficient preparation, he rescheduled the hearing for September 21, 2015.

SSD responded to Judge Slotnick's order by filing a Complaint in the Superior Court in Anchorage against the State of Alaska, captioned *Seward Ship's Drydock, Inc. v. State of Alaska*, Case No. 3AN-14-10878 ("State Court Action").[11] In its Complaint, filed on

---

[7] Ex. 18 to Baker Decl., ECF No. 15-19.

[8] *Id*. at 2.

[9] *Id*. at 3.

[10] Ex. 19 to Baker Decl., ECF No. 15-20.

[11] Ex. 22 to Baker Decl., ECF No. 15-23.

5

December 18, 2014, SSD maintains that referral of the hearing to OAH violated Alaska statutes, and that Judge Slotnick's November 7, 2014 decision affirming OAH's jurisdiction similarly violated its statutory rights, depriving it of due process as guaranteed under both the Alaska and federal constitutions. SSD asked that the superior court enjoin OAH from adjudicating the appeal, dismiss the appeal without prejudice, and return the matter to ADOT/PF so that an experienced construction attorney could serve as the hearing officer. Contemporaneously with the Complaint, SSD filed its Motion for Preliminary Injunction, and supporting memorandum. ADOT/PF filed an opposition to this motion, although the concerns it raised primarily addressed procedural issues rather than the relief sought.[12] Nonetheless, ADOT/PF moved to dismiss the State Court Action as an inappropriate appeal of Judge Slotnick's November 7, 2014 denial of SSD's Motion to Dismiss.[13] According to SSD,

> After numerous requests to the court, oral argument was set for July 24, 2015. Several days prior to the scheduled argument, the court ordered it to be rescheduled, and the reset date was September 3, 2015. Just prior to that date, the court unilaterally set a new hearing date of September 21, 2015, which was the same date set for commencement of the OAH hearing before ALJ Slotnick.[14]

---

[12] Ex. 24 to Baker Decl., ECF No. 15-25.

[13] The Baker Declaration identifies Exhibit 25 as the Commissioner's Motion to Dismiss. *See* Baker Decl., ECF No. 15-1 at ¶ 26. However, Exhibit 25 is the Commissioner's Reply to Plaintiff's Opposition to Motion to Dismiss and Request for Oral Argument on the Motion to Dismiss. *See* ECF No. 15-26.

[14] Baker Decl., ECF No. 15-1 at ¶ 27. It is unclear from Mr. Baker's declaration whether the court was to hear the Motion for Preliminary Injunction, the Motion to Dismiss, or both matters, at oral argument.

6

On August 31, 2015, the Alaska Attorney General's office, on behalf of ADOT/PF, initiated a separate claim against SSD for fraud, alleging SSD had violated its certification that it would comply with certain "Buy America" requirements that had been incorporated into the parties' contract.[15]  The claim seeks damages against SSD under AS 36.30.620 and AS 36.30.687, as well as forfeiture of SSD's pending claims under AS 36.30.687.  The claim was transmitted to the commissioner of ADOT/PF under cover of a letter which acknowledged that the claim arose from the same underlying facts as SSD's pending claim, and would ordinarily be joined with the hearing set for September 21, 2015.  In light of the imminent hearing, ADOT/PF requested that, if joinder of the two claims was not possible, "the Commissioner delay his final decision in OAH Case No. 14-1305-CON until a hearing and final decision is issued in [its] claim against SSD because [it] seeks forfeiture of the claims presented in OAH Case No. 14-1305-CON."[16]

On September 16, 2015, SSD filed its voluntary petition for bankruptcy under chapter 11 of the Bankruptcy Code.  By this time, SSD was no longer operating or conducting business.  According to its bankruptcy filings, it has no employees.  Its claims against AMHS are its primary asset, although as of the petition date, it held some cash, and has two other, smaller accounts receivable.  While the cash would be sufficient to pay all disclosed undisputed, liquidated claims listed by the debtor on its schedules, SSD also lists

---

[15] Ex. 33 to Baker Decl., ECF No. 15-34.  ADOT/PF's claim is designated as OAH No. 15-1305 CON, whereas SSD's claim is designated OAH No. 14-1305.

[16] *Id.* at 2.

7

a large disputed and unliquidated claim held by the United States Department of Labor that exceeds its liquid assets.[17]

The day after the petition was filed, Judge Slotnick required SSD and ADOT/PF to brief the effect of the automatic stay upon the pending administrative hearing set to begin on September 21, 2015 before him. He concluded that SSD's appeal had not been stayed on account of its bankruptcy, but delayed the hearing for two days, to begin on September 23, 2015.[18]

On September 20, 2015, SSD filed its Notice of Removal under 28 U.S.C. § 1452(a), by which it removed to the bankruptcy court: (1) its administrative claim against AMHS, (2) ADOT/PF's administrative claim against it, and (3) the State Court Action. ADOT/PF quickly filed its Motion for Remand. It argues that the administrative claims are not subject to removal, that both of the administrative claims and the State Court Action are exempt from removal because they are exercises of the State of Alaska's police and regulatory powers, and that the eleventh amendment and sovereign immunity also preclude removal.[19] ADOT/PF

---

[17] After oral argument, Vigor Alaska-Seward LLC, an unsecured creditor not listed in SSD's schedules, filed a proof of claim in the amount of $1,800,000.00 for breach of representation and warranties. SSD brought the claim to the court's attention by filing its Notice of Additional Claim on January 21, 2016. ECF No. 40. Within the Notice, SSD states that it had no notice of the claim, and does not concede the validity of the claim. The existence of such claim may provide a reason for SSD to stay in bankruptcy, but as explained below, the discovery of such creditor does not negate its motivation for filing bankruptcy days before the scheduled administrative hearing, or removing the proceedings after Judge Slotnick declined to stay the commencement of the administrative hearing.

[18] Ex. 37 to Baker Decl., ECF No. 15-38. In his order, Judge Slotnick observed that ADOT/PF's claim against SSD had not been consolidated with SSD's claims against ADOT/PF, and, therefore, the automatic stay did not apply to the debtor's actions.

[19] ADOT/PF originally argued that removal was improper because the court lacked subject matter jurisdiction to hear the matters under 28 U.S.C. § 1334(b), which vests district courts, and derivatively by

8

also argues that all matters should be remanded for equitable reasons under 28 U.S.C. § 1452(b). SSD disagrees with ADOT/PF's analysis and maintains that removal of both the administrative claims and the State Court action was proper. Moreover, it contends that remand would result in a violation of its due process rights and a denial of justice.

## ANALYSIS

SSD removed the administrative claims and State Court Action under 28 U.S.C. § 1452(a), which provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action be a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.[20]

Removal is effectuated by filing the appropriate notice with the court from which the case is to be removed, and is automatic upon filing.[21]

---

general orders the bankruptcy courts, with jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." At a minimum, the court finds that all matters are related to SSD's bankruptcy. A claim is related to a bankruptcy "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Fietz v. Great W. Sav. (In re Fietz),* 852 F.2d 455, 457 (9th Cir.1988) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). The pending administrative claims and the State Court Action will undoubtedly alter the debtor's rights and the administration of the bankruptcy estate.

[20] 28 U.S.C. § 1452(a).

[21] Fed. R. Bankr. P. 9027(a)(1); *Roberts v. Bisno (In re Bisno)*, 433 BR 753, 756 (Bankr. C.D. Cal. 2010). Rule 9027(a)(2) requires that removal be timely sought under its provisions. ADOT/PF does not challenge the timeliness of SSD's removal.

9

ADOT/PF asks this court to determine whether the three matters presently comprising this adversary proceeding were properly removed under § 1452(a). It argues that the administrative claims are not made within a "civil case" for purposes of removal. Additionally, it contends that the administrative claims arising from a government construction contract, including its recently filed fraud claim, fall within the ambit of the state's police and regulatory powers and are excluded from removal under § 1452(a). Finally, it contends sovereign immunity under the eleventh amendment of the United States Constitution acts as a complete bar to suit in federal court. The court finds it unnecessary to decide whether SSD properly removed the three matters under § 1452(a). Even if properly removed, this court has broad discretion to remand the matters under § 1452(b), and elects to do so.

Under 28 U.S.C. § 1452(b) courts may remand removed matters on "any equitable ground."[22] While the phrase "equitable ground" is not defined in the statute, courts have considered a multitude of factors to determine whether remand is appropriate:

1. the effect or lack thereof on the efficient administration of the estate if the Court recommends remand or abstention;

2. the extent to which state law issues predominate over bankruptcy issues;

3. the difficult or unsettled nature of applicable law;

4. the presence of related proceedings commenced in state court or other non-bankruptcy proceedings;

---

[22] 28 U.S.C. § 1452(b).

10

> 5. the jurisdictional basis, if any, other than § 1334;
>
> 6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
>
> 7. the substance rather than the form of an asserted core proceeding;
>
> 8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
>
> 9. the burden on the bankruptcy court's docket;
>
> 10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
>
> 11. the existence of a right to a jury trial;
>
> 12. the presence in the proceeding of nondebtor parties;
>
> 13. comity; and
>
> 14. the possibility of prejudice to other parties in the action.[23]

The facts and circumstances of each case determine which, and how many, factors should be considered in the court's exercise of discretion under § 1452(b). That being said, application of the factors is not a mathematical equation. In the appropriate circumstance, "any one of the relevant factors may provide a sufficient basis for equitable remand."[24] The discretion to remand under § 1452(b) is "an unusually broad grant of authority . . . [that] subsumes and reaches beyond all of the reasons for remand under nonbankruptcy removal

---

[23] *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 761 (Bankr. S.D. Cal. 2007).

[24] *Fed. Home Loan Bank of Chicago v. Banc of Am. Sec. LLC*, 448 BR 517, 525 (C.D. Cal. 2011).

11

statutes."[25] Consistent with this broad authority, the decision to remand a matter under § 1452(b) is not reviewable on appeal.[26]

Both SSD's administrative appeal, and the motion to dismiss its State Court Action, were scheduled for hearing on Monday, September 21, 2015. SSD filed its bankruptcy petition on Wednesday, September 16, 2015, but Judge Slotnick recognized that the bankruptcy did not stay an action commenced by the debtor and ordered that the matter proceed on September 23, 2015.[27] During the intervening weekend, on Sunday, September 20, 2015, SSD electronically filed its Notice of Removal, which states:

> The State's hearing officer is aware of [the State's claim for fraud], which is clearly stayed by SSD's bankruptcy filing, but has refused to stay the hearing on SSD claims against AMHS, even though the two claims share common facts and some legal issues, such that the State's fraud claim is a de facto counterclaim to the SSD claims on the Tustumena contract.[28]

The timing of the bankruptcy filing, and the notice of removal, demonstrate that both were undertaken to preclude a hearing before a judge that SSD does not want to consider its administrative appeal. To its credit, SSD readily admits this. It defends the removal of these matters in terms of ensuring due process based upon Judge Slotnick's prior denial of SSD's motions, and the Alaska superior court's failure to promptly grant the injunctive relief sought

---

[25] *Fenicle v. Boise Cascade Co.*, 2015 WL 5948168, at *5 (N.D. Cal. Oct. 13, 2015) (quoting *In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999)).

[26] 28 U.S.C. § 1452(b).

[27] For this same reason, SSD's State Court Action could have also proceeded as scheduled despite the bankruptcy. However, the superior court stayed the action upon notice of the bankruptcy filing. Ex. 40 to Baker Decl., ECF No. 15-41.

[28] Notice of Removal, ECF No. 1 at 2.

12

by SSD.  While due process entitles a party to notice and the opportunity to be heard, it does not guaranty that the parties may select who shall hear its claims.  SSD's actions constitute a brazen and overt attempt at forum shopping to divest Judge Slotnick from hearing the administrative claim, and to preclude the Alaska courts from hearing any resulting appeals that might arise.  In this instance, SSD's clear attempt at forum shopping alone merits remand of the removed matters.

After oral argument, SSD filed a Supplemental Briefing in Support of Seward Ship's Drydock's Opposition to Remand Motions (ECF No. 37), in which it argues that the bankruptcy was necessary to avoid separate hearings on its claim and a later hearing on ADOT/PF's claim.  SSD maintains that it was severely disadvantaged by the late filed claim because it does not have the resources to litigate the claims separately.  Yet, even in its supplement briefing, SSD relates the perceived harms back to the Commissioner's failure to appoint the hearing officer it wanted.  The point remains that SSD filed its bankruptcy, and removed the proceedings, as a litigation tactic.[29]

Removal of the administrative claims within this context also invokes fundamental principles of comity which similarly support remand.  "The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction."[30]  It is a prudential doctrine, rather than a hard and fast rule, borne out of "a proper respect for state

---

[29] Regardless of who hears the two administrative appeals going forward, removal has provided the opportunity to have the matters heard together, whether in the federal courts or on remand.

[30] *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010).

13

functions."[31] Within the bankruptcy context, a bankruptcy court may abuse its discretion when it retains jurisdiction to hear a "related to" matter involving complex issues of state law if the underlying bankruptcy case has been dismissed.[32] Discussing the role comity must play in deciding whether or not to retain jurisdiction in such instances, the Bankruptcy Appellate Panel for the Ninth Circuit has observed that "if comity is anything it is the concept that, all else being equal, state law issues ought to be decided by state courts."[33]

Here, the principles underlying the doctrine of comity, taken together with the thinly veiled efforts to forum shop, compel the remand of all matters so that they may proceed through well established administrative procedures adopted by the State of Alaska, and, if necessary, for further review by the Alaska state courts pursuant to Alaska laws. The court agrees with ADOT/PF that "federal jurisdiction cannot be predicated on the . . . fear that the state court is biased."[34] Equally clear is that an appeal in the state court forum is the appropriate remedy for any error that may be made in deciding SSD's and ADOT/PF's administrative claims.[35]

---

[31] *Id*. (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 112 (1981)).

[32] *Linkway Inv. Co., Inc. v. Olsen (In re Casamont Inv'rs, Ltd.)*, 196 B.R. 517, 525 (B.A.P. 9th Cir. 1996).

[33] *Id*.

[34] *Fed. Nat'l Mortg. Ass'n v. Davis*, 963 F. Supp. 2d 532, 543 (E.D. Va. 2013).

[35] *Whitestone Sav. & Loan Ass'n v. Romano*, 484 F. Supp. 1324, 1326 (E.D.N.Y. 1980)("A generalized claim of deprivation of due process of law . . . is insufficient . . . to sustain removal in these circumstances.").

The significant weight to be given comity in this instance is further demonstrated by, and tied to, the nature of the removed claims. The claims arose, and all operative events occurred, prior to SSD's bankruptcy filing. The claims exist independently of this bankruptcy case, and are based wholly upon state law. As such, they are non-core claims over which the bankruptcy court has only "related to" jurisdiction.[36] These factors also strongly suggest that all of the removed claims – both SSD's and ADOT/PF's administrative claims and the State Court Action – should remain in the state forum.

In sum, SSD attempts to have a federal court decide an Alaskan administrative hearing that was scheduled to begin days after it filed for bankruptcy. It appears that its bankruptcy was filed in large part, if not wholly, to divest the administrative law judge of jurisdiction after its multiple, prior efforts to do so were unsuccessful. State administrative procedures have been enacted to hear these state law claims, and the Alaska courts are well equipped to address any appeals that may arise. SSD's disagreement with these procedures, or with the decisions issued therein, does not warrant retention of the removed state law claims by this court. For the reasons detailed above, I find that the facts and circumstances surrounding these matters require that the removed matters be remanded pursuant to 28 U.S.C. § 1452(b). Therefore,

---

[36] SSD argues that it has a statutory right of turnover against ADOT/PF under § 542(b). This subsection provides that "an entity that owes a debt, that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.*" 11 U.S.C. § 542(b)(emphasis added). ADOT/PF's fraud claim clearly arises from the same contract and would constitute an offset against any additional compensation to which SSD may be entitled. All aspects of SSD's claims for compensation and any offsets or defenses, should be litigated in a single proceeding.

15

**IT IS ORDERED** that the following two motions are GRANTED:

1) Motion To Remand Administrative Claims and State Court Action (ECF No. 11), filed by defendant State of Alaska, Department of Transportation and Public Facilities, and

2) Motion for Remand or, in the Alternative, Abstention and Request for Order That Remanded/Abstained Proceedings are Exempt From Bankruptcy Stay and Can Proceed During Pendency of Plaintiff/Debtor's Bankruptcy Proceeding and Request For Attorney Fees, Costs and Expenses (ECF No. 10), filed separately by the Commissioner of ADOT/PF.

**IT IS FURTHER ORDERED** that the administrative claims captioned as *Seward Ship's Drydock, Inc. v. Alaska Highway Marine System*, OAH No. 14-1305 CON, and *Alaska Highway Marine System v. Seward Ship's Drydock, Inc*, OAH No. 15-1305 CON, filed with the State of Alaska, Office of Administrative Hearings, are REMANDED pursuant to 28 U.S.C. § 1452(b).

**IT IS FURTHER ORDERED** that the civil action captioned *Seward Ship's Drydock, Inc. v. State of Alaska*, Case No. 3AN-14-10878 filed in the Alaska Superior Court is REMANDED pursuant to 28 U.S.C. § 1452(b).

**IT IS FURTHER ORDERED** that plaintiff Seward Ship's Drydock, Inc.'s Motion For Leave To Amend Complaint (ECF No. 21) is DENIED as moot in light of the remand of all matters removed under 28 U.S.C. § 1452(a).

DATED: February 1, 2016.

                                                 BY THE COURT

                                                 /s/ Gary Spraker
                                               GARY SPRAKER

                                                United States Bankruptcy Judge

Serve:       D. Bundy, Esq.
                 S. Baker, Esq.
                 G. Sleeper, Esq.
                 G. Gustafson, Esq.
                 S. Gray, Esq.
                 J. Travostino, Esq.
                 SVS